48223, 48224. DURRETT v. FARRAR; and vice versa.
48225. FARRAR v. FULLER.
48226. DURRETT v. FARRAR.

Clark, Judge. This opinion covers four appeals arising out of a trial of a wrongful death action against three defendants. Mrs. Polly Farrar sued for the death of her 21-year-old son who was killed while riding as a passenger in a Volkswagen being driven at a high speed by another young man, William Bruce Dangler, when the speeding car crashed into a tree. The driver also died at the scene. Title to the automobile was placed in D. C. Durrett at the time it was purchased for Debra S. Durrett, his 20-year-old daughter, this being due to her age. The three defendants were Durrett, who was sued under the family purpose doctrine, the daughter, against whom liability was claimed both on the basis of agency and of negligent entrustment, and the administrator of the deceased driver for alleged negligence in operating the death vehicle.

We will refer to these parties in their respective postures, thusly: plaintiff passenger, defendant father, defendant daughter, and defendant driver. A three-day trial ended in a verdict being directed for the defendant father and the jury finding in favor

of both of the other defendants. Plaintiff filed a motion for new trial which was subsequently amended. The trial judge first granted a new trial on the general grounds as to the defendant daughter alone. Thereafter, upon motion he vacated this discretionary ruling and entered a new order. In this he again granted a new trial as to the defendant daughter alone but in doing so specified he did so on the basis of three special grounds involving alleged errors in his charge to the jury which dealt solely with the defendant daughter. All other grounds of the new trial motion were overruled.

The tragic deaths of the two young men were the climax of a Fourth-of-July week-end party at the Atlanta Yellow Umbrella apartments hosted by three young women. Defendant daughter Debra together with plaintiff passenger and defendant driver were among the many guests, all of whom participated in drinking alcoholic beverages. A disputed fact was knowledge by the plaintiff passenger and by defendant daughter of the number of libations imbibed by defendant driver and the effect upon his ability to drive. Testimony of a service station attendant from his observation of the two young men while they were en route to their ill-fated destiny was sufficient to create a jury question as to whether they were under the influence of intoxicants shortly before they met their death.

Also in dispute was whether defendant driver had defendant daughter's permission to use the Volkswagen for a mission on her behalf to obtain hamburgers. Her testimony was to the contrary and that her car keys had been taken from a window sill against her wishes and without her knowledge. The jury's verdict indicated these arbiters of fact accepted her version.

Another disputed fact was a contention that defendant driver had panicked while being chased by an unmarked police vehicle which plaintiff argued prevented application of assumption of risk since he did not have the possibility to extricate himself which would have been the situation during a previous stop at the service station.

1. Plaintiff enumerated as error the court's direction of a verdict for defendant father. Plaintiff argues that defendant daughter's alleged action in dispatching defendant driver for hamburgers placed the car under her control and therefore within the family purpose doctrine.

In *Finnochio v. Lunsford,* 129 Ga. App. 694 (201 SE2d 1), we said:
" 'In order to qualify as a provider under the family purpose

doctrine one must be the principal mover, one who intends to provide for another or others the particular thing, the automobile, and takes steps on his own responsibility to see the consummation of the transaction, and contributes substantially of his own means toward that end without expectation of reimbursement or compensation,' Smith v. Simpson, 260 N. C. 601 (133 SE2d 474) . . . It is important to remember however that ownership will not in and of itself create liability. [Citations.] 'To allow any recovery "based upon mere ownership" would deprive the defendant of property without due process of law, would authorize a recovery without liability, and would compel payment without fault.' *Frankel v. Cone,* 214 Ga. 733, 736 (107 SE2d 819); *Koutras v. Lazarus,* 122 Ga. App. 870, 872 (179 SE2d 106)."

"The principal factor in such cases is authority and control of the vehicle, and this is not necessarily determined by title to the vehicle or payment for the expenses of operation. *Baker v. Shockey,* 93 Ga. App. 595, 596 (92 SE2d 314) . . . Even if it were conceded that defendant was the owner of the vehicle, the case would not turn on this point, as it would not disprove the uncontradicted evidence showing that the son as an emancipated minor had the right to and did exercise exclusive authority and control over the vehicle." *Calhoun v. Eaves,* 114 Ga. App. 756, 760, 761 (152 SE2d 805). "Where, as here, the driver is only a borrower and the transaction is only a bailment, there is no liability under the doctrine of respondeat superior. [Cits.] The fact that the son had a right to use the car as he pleased for his own purposes is not sufficient to make his father, the defendant owner, liable where the son lent the car to another under circumstances where, had the defendant himself lent the car to such other he would not be liable. Nor can we find where the allegation that the father entrusted the automobile with his son 'to promote his said son's pleasure and to enhance his prestige' strengthens the case, granting that it might enhance the son's prestige to lend his automobile to his fellow students. It is not the motive of the defendant in making the automobile available, but the use to which it is put which determines liability . . . At the time of the collision, the automobile was being operated by Kent, a borrower, solely for his own purposes." *Johnson v. Brant,* 93 Ga. App. 44, 47 (90 SE2d 587).

Consequently, a mere showing that the vehicle was registered in the father's name and utilized by a family member is alone not

sufficient to establish this to be a family purpose car. Defendant daughter testified she had exclusive use of the car and that the sole reason title was in her father's name and not hers was simply because she was not old enough (T. 48). She further testified to a specific restriction her father had placed upon its use: "I could only take it at certain times and certain places. And I wasn't, nobody was supposed to drive it except me." (T. 48). There being no contradiction of this evidence, the nature of the restriction brought the case within the ruling of *Pritchett v. Williams,* 115 Ga. App. 8 (153 SE2d 639): "When there are no particular facts sufficient to show that the owner of a family purpose automobile authorized a family member to delegate his authority to drive the automobile, the owner is not liable for injuries arising out of the operation of the automobile by another person at the request of and for the convenience and comfort of the family member but outside his presence and control." As there was not sufficient proof to bring the event within the family purpose doctrine and as defendant daughter testified she alone was permitted to drive the car and since she was not present in the car at the time of the incident, the court properly directed a verdict for defendant father.

2. In case No. 48226, there is a cross appeal in which defendant daughter enumerates as error the court's denial of defendant daughter's motions for directed verdict based upon there being no credible evidence of any agency or entrustment relationship, no evidence of negligence, and that if she had been negligent the guest passenger's later contributory negligence exonerated her. As factual issues existed on these phases, it was proper to deny this motion and submit these matters to jury determination. Code Ann. § 81A-150.

3. Another assignment of error attacks the manner in which the court vacated its original grant of a new trial as to defendant daughter alone on general grounds and substituted a new order specifying the special grounds dealing with alleged errors in the jury charge.

"The first grant of a new trial shall not be disturbed by the appellate court if said new trial is granted in the discretion of the judge on general grounds, unless the plaintiff in error shall show that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the trial court . . ." Code Ann. § 6-1608. Clearly, since the grant of a new trial on general grounds was within the court's

discretion, the timely vacating of such grant was also within the court's discretion. Therefore, in the absence of any showing of abuse of the trial court's discretion or lack of jurisdiction, and where, as here, there was some evidence to support the verdict, this court will not review the order timely taken which vacated the discretionary grant of a new trial on general grounds. See *Dunn v. Gilbert,* 217 Ga. 358 (122 SE2d 93).

4. It is obvious that the trial judge withdrew his original order for the purpose of specifying the particular grounds which motivated his decision. With his issuance of the requisite immediate review certificate he entrusted to the appellate court the duty to pass upon the correctness of his ruling. This practice by trial judges is to be commended as our court and the Supreme Court possess the power to review a grant of a new trial when the order is limited to special grounds. Code Ann. §§ 6-1608 and 81A-150 (c); *Rice v. Matthews,* 104 Ga. App. 593 (122 SE2d 175); *Southern States, Inc. v. Thomason,* 128 Ga. App. 667 (1) (197 SE2d 429).

5. We next address ourselves to the effect of a new trial to plaintiff limited to one defendant in a case involving joint tortfeasors. This presents two questions for determination. (a) Does the co-defendant against whom the new trial is granted have standing to complain as to the judicial release of the other defendant? Logic would indicate that he should have the right to complain in that since the early case of *Simpson v. Perry,* 9 Ga. 508, our Georgia rule has been that in suits involving joint tortfeasors there cannot be any apportionment of damages. See *Gazaway v. Nicholson,* 190 Ga. 345, 348 (9 SE2d 154) where the Supreme Court declined to review and overrule the former decisions. Nevertheless, we are not authorized to adopt a principle on the basis of our personal ideas where our Supreme Court has ruled otherwise. Code Ann. § 2-3708. Such a binding ruling was made in *Brissette v. Munday,* 222 Ga. 162 (149 SE2d 110) which held that a joint tortfeasor against whom a new trial has been granted has no standing to complain as to the verdict releasing the co-defendant. See also *Collier v. Hyatt,* 110 Ga. 317 (35 SE 271). (b) Is it proper to grant a new trial as to one joint tortfeasor where the result is equivalent to permitting a nonliability finding to remain in force as against the other defendant?

Our study of the authorities indicates the answer revolves around whether the verdict is *for* or *against* all of the joint tortfeasors.

The general rule is stated in *Finley v. Southern R. Co.,* 5 Ga. App. 722 (64 SE 312) to be that a plaintiff can sue several joint tortfeasors in the same action and can bind one and release others as the evidence may authorize, but if the verdict be rendered *against* all the defendants participating in a joint tort the judgment thereon is single. Thus, in *Smith v. Nelson,* 123 Ga. App. 712 (5) (182 SE2d 332) the verdict and judgment was based upon a joint tort supported by evidence of joint action by the defendants so that our court ruled the grant of a new trial based upon errors committed as to one defendant alone required that the new trial grant include the codefendant.

When the verdict is *for* all the defendants, it is permissible to grant a new trial as to one defendant as to errors peculiarly applicable to that defendant and decline to continue the co-defendant in the subsequent trial. This differentiating element was pointed out by the late Judge Townsend in *Hawkins v. Benton Rapid Express, Inc.,* 82 Ga. App. 819, 822 (62 SE2d 612). Similarly the Supreme Court in *Chicago Building &c. Co. v. Butler,* 139 Ga. 816 (1) (78 SE 244) ruled that "Where a judgment excepted to is erroneous in part and can be segregated so that the legal part can be separated from the illegal, it is not necessary to set aside the entire judgment, but only the portion which is erroneous." Although that case involved a contractual problem rather than a joint tort, the basis for that decision is stated at page 819 that "We understand the rule to be that where a judgment is entire and indivisible, it can not be affirmed in part and reversed in part, but the whole must be set aside if there be reversible error therein." A discussion of this divisibility problem is contained in *Smith v. Nelson,* 123 Ga. App. 712 (5), supra, and in *Ammons v. Horton,* 128 Ga. App. 273 (196 SE2d 318). In this latter case at page 275 our court quoted with approval from the former opinion the following which we deem is a correct statement of the applicable principle: "A more accurate way of stating the rule, perhaps, is that where the jury is authorized to find *joint liability* if a new trial is to be granted to one the indivisible character of the judgment requires that it be granted to all; but if there is a finding of *no liability* as to one defendant, a reversal as to him does not require a new trial as to others." At page 728 of *Smith v. Nelson,* supra, are cited a number of cases serving as the basis of this rule, reference in each citation being to the evidence produced therein where there was clearly an absence of liability as to the released co-defendant.

In the instant case we have a situation that differs from those heretofore cited in that we are dealing with a verdict for both defendants which constitutes a finding of fact of no liability for both the driver and daughter on the basis of agency. The other theory on which plaintiff had sought to establish liability upon the daughter treated as the owner of the car was negligent entrustment. In seeking a new trial the plaintiff alleged various errors which dealt with both driver and owner under the agency theory and also alleged further errors as against the daughter alone under the negligent entrustment concept. The trial court finally decided (and we hold herein that he did so correctly) that a new trial would not be granted as to both defendants, but agreed with the proposition that he had erred in his charge in certain respects limited to the voluntary entrustment thesis. This ruling was erroneous because this was contrary to the verdict which he approved absolving the defendant car owner on the agency theory. In short, the verdict found for both defendants constituted the jury's finding that the plaintiff was not entitled to recover as against the defendant driver and the car owner, the defendant daughter. To proceed again against the car owner alone would be contrary to the jury's exoneration of both defendants. The inconsistency appears more clearly when one considers that the defendant driver who has been released by the jury's finding in his favor was the principal actor in this tragic drama. The grant of a new trial as to Debra Durrett alone was error.

6. "If a driver, from intoxication, is in a condition which renders him incapable of operating it [an automobile] with proper diligence and skill, and this is known or palpably apparent to one entering the car, this is a fact which may be proved for the consideration of the jury, along with other facts, to throw light on the question of whether such person exercised ordinary care in entering the car or in remaining in the car, or in reference to his conduct while in it." *Powell v. Berry,* 145 Ga. 696, 700 (89 SE 753, LRA 1917A 306).

Sub judice there was evidence to support the verdict for both defendants. Plaintiff passenger riding with defendant driver after being with him at the apartment party with joint comsumption of intoxicating beverages; his election to remain in the car when he had an opportunity to leave during a stop at a service station; and the fact of a third party refusing to join them due to their intoxication constituted enough to support

assumption of the risk.

"There is no better established rule of law than that negligence, and diligence, even gross negligence and slight diligence, are questions of fact, to be determined by a jury, and not by the court. [Cit.] Further, where a jury returns a verdict, and it has the approval of the trial judge, on appeal that verdict must be affirmed if there is *any* evidence to support it. 'After a verdict, the evidence is construed in its light most favorable to the prevailing party, for every presumption and inference is in favor of the verdict.' [Cits.]" *Kirkland v. Moore,* 128 Ga. App. 34 (195 SE2d 667).

Therefore, the trial court did not err in vacating its order for a new trial on general grounds for defendant car owner nor in denying plaintiff passenger's motion for a new trial on general grounds as to defendant driver.

7. Plaintiff passenger enumerates as error the failure of the trial judge to charge on comparative negligence although plaintiff did not request such charge. "Where a plaintiff alleges that an injury was sustained by him through no fault of his own, but was caused wholly by the negligence of the defendant, the trial court is not bound, in the absence of an appropriate request by the plaintiff, to charge the jury as to the law of contributory negligence and apportionment of damages." *Tucker v. Central of Ga. R. Co.,* 122 Ga. 387 (6) (50 SE 128). "When the issue of reducing damages under the doctrine of comparative negligence is not raised by the pleadings, the court's omission to give an instruction on this issue, in the absence of a proper request therefor, will not necessitate a reversal where the law on the subject of negligence as it affects the plaintiff's right to recover, and the right of the defendant to have a verdict rendered in his favor, has been substantially and fairly submitted to the jury. [Cits.]" *Big Apple &c. Market v. W. J. Milner & Co.,* 111 Ga. App. 282, 288 (141 SE2d 567).

"The charge of the court as to plaintiff's failure to exercise care for her own safety was not erroneous because of failure to go further and charge without request as to comparative negligence and diminution of damages. *Kerns v. Crawford,* 51 Ga. App. 158 (3) (179 SE 854)." *Malone v. City of Rossville,* 107 Ga. App. 271 (3) (129 SE2d 563).

8. Plaintiff passenger assigns as error the trial court's charge and recharge on ordinary care and assumption of risk in that he did not further charge "that mere knowledge on the part of a

passenger that the driver has been drinking intoxicating beverages is not, as a matter of law, knowledge that such person is so much under the influence of intoxicants as not to be able to drive safely or with ordinary efficiency, so as to make the passenger guilty of such lack of ordinary care for his own safety, or assumption of risk, as will bar a recovery against the driver for death occasioned by the driver's gross negligence." Since plaintiff at the trial did not request this charge and did not object to the charge without this addition, he has waived his rights and has no standing to complain on appeal. See Code Ann. § 70-207 (a) and *Nathan v. Duncan,* 113 Ga. App. 630, 638 (149 SE2d 383). The charges are not erroneous, being correct statements of the legal principle; the charge on plaintiff's exercise of ordinary care having been approved in *Malone v. City of Rossville,* 107 Ga. App. 271 (3) (129 SE2d 563); *Kerns v. Crawford,* 51 Ga. App. 158 (3) (179 SE 854); and the charge on plaintiff's assumption of the risk having been approved in *Southern R. Co. v. Hogan,* 131 Ga. 157 (62 SE 64); *City of Columbus v. Griggs,* 113 Ga. 597 (38 SE 953); *Lowe v. Athens Marble & Granite Co.,* 104 Ga. App. 642, 645 (122 SE2d 483).

"Error is assigned upon this portion of the charge, not on the ground that the court incorrectly stated the law, but because the court should have gone further and instructed the jury when it became incumbent on the plaintiff to exercise ordinary care to avoid the consequences of the defendant's negligence, and that if the injury was the result of the fault of both, and could not have been avoided by the exercise of ordinary care on her part, the damages should be apportioned. 'A correct charge is not to be characterized as incorrect simply because of an omission to also charge in the same connection an additional pertinent legal proposition. *Roberts v. State,* 114 Ga. 450, 453, and cases cited. Where a trial judge omits to charge something which he should, his omission to so charge should be excepted to, and not a correct instruction which he actually gave.' *Holston v. Railway Co.,* 116 Ga. 660." *Tucker v. Central of Ga. R. Co.,* 122 Ga. 387 (50 SE 128). "Failure to except before verdict generally results in a waiver of any defects in the charge [cits.], the exception under Code Ann. § 70-207 (c) applying only when there has been a substantial error which was blatantly apparent and prejudicial, and which resulted in a gross miscarriage of justice. [Cits.]. Since the verdict returned was within the range of the testimony . . . there is no miscarriage of justice." *Bryant v. Housing Authority*

*of the City of Atlanta,* 121 Ga. App. 32 (2) (172 SE2d 439).

9. Plaintiff passenger enumerates as error the failure of the trial court to charge certain motor vehicle statutes, those being Code Ann. §§ 68-1625, 68-1626, 68-1640. As there was no request to charge these particular statutes and as these statutes were not pleaded in the complaint nor was violation thereof alleged as negligence per se, no error was committed. "It is not error to omit from the charge of the court the provisions of a Code section without a request therefor unless they affect an issue made both by the pleadings and the evidence; and this is particularly true when there is no allegation of violation of the particular Code section as negligence per se . . ." *Brown v. Kirkland,* 108 Ga. App. 651 (1) (134 SE2d 472). In accord, *Juhan v. C. W. Matthews Contracting Co.,* 114 Ga. App. 608 (152 SE2d 623).

10. Plaintiff passenger enumerates as error the court's sustaining objections to questions asked on cross examination of defendant daughter. Two of these questions concerned two other occasions where a third party in one instance and defendant driver in another had used the car with defendant car owner's permission. The court sustained the objections holding that other instances were not relevant to the issue of proving the existence of the family car doctrine. " 'The right of a party to a thorough and sifting cross examination as to witnesses called against him is not infringed by confining such examination to matters that are relevant to the issues in the case.' *Robinson v. Murray,* 198 Ga. 690, 691 (4) (32 SE2d 496). The judge may inquire as to the relevancy of questions propounded upon cross examination and may restrict the cross examination to relevant matters." *Bass v. Bass,* 222 Ga. 378, 384 (149 SE2d 818).

Another question calling upon defendant daughter to answer whether defendant driver felt he could use the car during that week end party was repetitious and properly excluded on that ground. It is discretionary with the court to restrict cross examination so as to prevent needless repetition of questions as to matter which has already been fully developed on cross examination. *Western & Atlantic R. v. Hart,* 95 Ga. App. 810 (99 SE2d 302); *McCartney v. McCartney,* 217 Ga. 200, 201 (121 SE2d 785).

"The trial court has a discretion to control the right of cross examination within reasonable grounds, and the exercise of this discretion will not be controlled unless abused." *Gordy v. Powell,* 95 Ga. App. 822, 823 (3) (99 SE2d 313). These enumerations of

error are without merit.

11.   Two enumerations of error (Nos. 8 and 9) by plaintiff passenger complain of the court having sustained objections to questions of the police officer concerning other occasions on which he had dealt with defendant driver and his making of prior charges. We find no error in the court's ruling. In accord: *Flint Explosive Co. v. Edwards,* 84 Ga. App. 376, 389 (66 SE2d 368); *Cox v. Norris,* 70 Ga. App. 580 (1) (28 SE2d 888); *Hollomon v. Hopson,* 45 Ga. App. 762, 765 (8) (166 SE 45) and citations therein.

*Judgment reversed in case No. 48223; judgments affirmed in cases Nos. 48224, 48225 and 48226. Bell, C. J., Hall P. J., Eberhardt, P. J., Deen, Quillian and Stolz, JJ, concur. Pannell, J., concurs in the judgment only. Evans, J., dissents.*

Argued May 30, 1973 — Decided October 29, 1973 — Rehearing denied November 27, 1973 —

*Dunaway, Shelfer, Haas & Newberry, L. Robert Lake,* for Durrett. *William R. Parker,* for Farrar.

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, Richard L. Stumm,* for Fuller.

Evans, Judge, dissenting in part and concurring in part. D. C. Durrett furnished a Volkswagen automobile to his daughter, Debra Durrett, under the family purpose doctrine. There was evidence which showed that she had allowed others to drive the car with her father's knowledge, and to which he made no objection. There was also evidence which showed that Debra loaned the car to Bruce Dangler and Charles Farrar to go and get some hamburgers and coffee for her and them; and that while Bruce Dangler was driving the car on this mission, it was wrecked and both Dangler and Farrar were killed. The mother of Charles Farrar brought an action for her son's wrongful homicide against Bruce Dangler's estate, and against Debra Durrett and D. C. Durrett, as defendants. On the trial of the case the following results were reached:

1.   The jury returned a verdict in favor of the administrator of Bruce Dangler; the trial court denied plaintiff's motion for new trial, and on appeal, the majority opinion in this court affirms.

2.   Debra Durrett moved for directed verdict, which was denied, and on her cross appeal; the majority opinion in this court affirms.

3.   The jury returned a verdict in favor of Debra Durrett; the trial court granted plaintiff's motion for new trial; and on her cross appeal the majority opinion in this court reverses.

4. The trial court directed a verdict in favor of D. C. Durrett, and on appeal, the majority opinion in this court affirms.

The effect of these holdings by the majority opinion is to allow no recovery to plaintiff, albeit it is agreed that Debra Durrett was not entitled to a directed verdict; but the jury's verdict in her favor is upheld. I dissent from the majority opinion in each instance, except in agreeing that Debra Durrett was not entitled to a directed verdict.

1. The trial court should have granted plaintiff's motion for new trial as to the administrator of Bruce Dangler; and this court should reverse its judgment in failing to do so. The trial court erroneously charged that plaintiff could not recover *unless gross negligence* was proven, and did not at any place charge that a recovery could be had upon proof of *simple* or *ordinary negligence*. If the evidence had shown that Charles Farrar was nothing more than a guest passenger in the Volkswagen, the rule of gross negligence would have applied. *Holtsinger v. Scarbrough,* 69 Ga. App. 117 (1) (24 SE2d 869). The rule is plainly stated in the above authority, as follows: "a 'guest' in an automobile, within the contemplation of the law that towards him the host owes only the duty of exercising slight care, is one who takes a ride in the automobile *merely for his own pleasure or on his own business and without making any return or conferring any benefit upon the host other than the pleasure of his company.* "(Emphasis supplied.) Also see *Fowler v. Glover,* 105 Ga. App. 216, 218 (123 SE2d 903), holding exactly as above and in the identical language. Also, *Nash v. Reed,* 81 Ga. App. 473 (1, 2) (59 SE2d 259).

But in this case there was a joint undertaking for the mutual benefit of both driver and passenger. Officer John Everett testified (Tr. 116) that Debra Durrett told him she loaned the Volkswagen to Bruce Dangler and this other boy (Charles Farrar) to go and get some coffee and hamburgers. The car was loaned to *both;* and *both* were to go for the hamburgers and coffee. This was a joint undertaking for the mutual benefit of Dangler and Farrar and Debra Durrett.

In *McBee v. Williamson,* 96 Ga. App. 859 (1) (101 SE2d 910), it is held: "An invitee in or upon an automobile, to whom the owner or operator thereof owes the duty of exercising *ordinary care* for his safety, is one whose presence in or upon the automobile is by invitation of the owner or operator for the purpose of *conferring some substantial benefit upon his host, that is, something more than merely affording the host the pleasure of the guest's company.*

*Nash v. Reed,* 81 Ga. App. 473 (2) (59 SE2d 259) . . . *Atlantic Co. v. Taylor,* 80 Ga. App. 25 (54 SE2d 910)." (Emphasis supplied.) The benefit to the driver may be very slight, in order to require his exercise of ordinary care for the safety of the passenger. In *Varga v. Williamson,* 110 Ga. App. 684 (139 SE2d 518), the passenger was to buy the driver a beer. In *Youmans v. Barry,* 104 Ga. App. 762 (123 SE2d 158), the passenger was to attend the driver's wedding. In *Holtsinger v. Scarbrough,* 69 Ga. App. 117, supra, the passenger stood on the rear of the car to depress it while its bumper was disengaged from a following car. In *Wright v. Lail,* 105 Ga. App. 261 (124 SE2d 487), the passenger helped to listen and attempted to locate a rattle in the car. In *Fountain v. Tidwell,* 92 Ga. App. 199, at 204 (88 SE2d 486), the passenger was to share the expense of the trip. In all of these cases it was held that the driver owed the duty of exercising *ordinary care* toward the passenger.

Of course, Debra Durrett contradicted Officer Everett's testimony. But it was for the jury to decide as to whether the disinterested witness, a police officer, testified truthfully, or whether Debra Durrett, an interested party to the litigation, testified truthfully. Under no view of the matter did the trial judge have the right to believe Debra, to disbelieve Officer Everett, and to charge the jury that plaintiff could not recover unless *gross negligence* was proven against the driver of the Volkswagen. This error demands the grant of a new trial as to the administrator of Bruce Dangler, defendant.

It is quite significant that the trial court recognized this error in plaintiff's motion for new trial as to Debra Durrett, and granted the motion for new trial because he admits he erroneously charged plaintiff could not recover without proving gross negligence. If this was error as to Debra Durrett, pray tell why it was not error as to Bruce Dangler, the driver? "What's sauce for the goose is sauce for the gander!"

2. We will not discuss the denial of Debra Durrett's motion for directed verdict. The majority opinion affirms, and I fully concur.

3. The trial court properly granted plaintiff's motion for new trial as to Debra Durrett. He first granted same on the general grounds; but rescinded his order and then granted same on grounds 6, 7 and 8 of the motion for new trial, which grounds complain because of the charge that plaintiff was required to prove gross negligence in order to recover of Debra Durrett. For all of the reasons we have discussed in Division 1, this judgment was correct, and not only correct, but was demanded. The evidence of Officer

Everett shows that Debra Durrett loaned the Volkswagen to both Dangler and Farrar for the mutual benefit of them and her, to wit, to go for hamburgers and coffee. This was a bailment by her to them. See *Nash v. Reed,* 81 Ga. App. 473 (3), supra. The trial court should have charged that plaintiff was entitled to recover upon proof of ordinary or simple negligence, provided they believed Officer Everett's testimony. And, of course, as held in *Brown v. Matthews,* 79 Ga. 1 (2) (4 SE 13): ". . . It is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts."

And, once having granted a new trial as to the defendant, Debra Durrett, *the trial court was required to grant a new trial as to all of the joint defendants, and against whom a joint judgment was taken.* See *Smith v. Nelson,* 123 Ga. App. 712, 713 (182 SE2d 332), where it was held: "The grant of a new trial to one who is a party to a *joint* judgment works the grant of a new trial or the setting aside of the judgment as to all other parties." To the same effect see *Smith v. Barnett,* 109 Ga. App. 142, 143 (135 SE2d 435); *Southeastern Truck Lines v. Rann,* 214 Ga. 813, 817 (108 SE2d 561); *Couey v. Bracewell,* 111 Ga. App. 760 (143 SE2d 7).

4. The trial court erred in directing a verdict in favor of D. C. Durrett, defendant.

Two very important factual issues in this case are: (a) Whether Debra's father imposed conditions by which others were not to be allowed to drive the car. (The burden was on Debra or her father to prove such conditions, if they existed); (b) Whether the car was loaned by Debra to Bruce Dangler just before the homicide, or whether Bruce Dangler took the keys and the car without her knowledge or consent.

5. The majority opinion holds that simply because Debra testified that she was not allowed to let others use the car, and that Dangler took the keys and the car without her knowledge and consent, the trial judge — without the aid of the jury — had the right to determine that Debra testified truthfully and thus remove any issue on these two important questions, and that he properly directed a verdict in her favor.

It is true that Debra did testify, in a very vague and unsatisfactory fashion, that she was not supposed to allow others to use the car (Tr. 48), and she could use it only at certain times

and places. She did not elucidate or explain as to what "times and places" she was allowed to drive the car; and she also testified that others had driven it with her father's knowledge. Of course, being a *party* in this action, her testimony, where vague and ambiguous, must be construed most strongly against her. *Southern R. Co. v. Hobbs,* 121 Ga. 428 (1) (49 SE 294). And evidence must always be construed most favorably towards the party *opposing* a motion for directed verdict, including all inferences arising therefrom when viewed in any light. *Miraglia v. Gose,* 17 Ga. App. 639 (1) (87 SE 906); *Jones v. Mayor &c. of Athens,* 105 Ga. App. 86 (1) (123 SE2d 420). Debra's father, D. C. Durrett, was sitting by her side in the courtroom (Tr. 47) and never did take the witness stand to swear that he had instructed Debra not to let others drive the car. The jury could draw such inference from his failure to testify as they thought proper. Code § 38-119.

But a stronger reason why this evidence could not be taken as true by the judge was that plaintiff offered evidence to impeach Debra's testimony in a very material particular; and it then became the *function of the jury* to determine whether her testimony should have been disbelieved and discredited in its entirety (Code §§ 38-1803, 38-1805), or credited in part and discredited in part.

In what material matter was Debra impeached? She testified positively that she did not give the keys to, or loan the Volkswagen automobile to, Bruce Dangler (Tr. 68). Officer John Everett directly and flatly contradicted her testimony, testifying that when he talked with Debra during his investigation of the homicide: "She [Debra] said [she] loaned it to Bruce Dangler and this other boy to go to get some coffee and hamburgers with (Tr. 116) . . . Q. Did she at any time tell you that Bruce Dangler stole her car? A. No sir." (Tr. 117) This, then, was impeachment of Debra's testimony by a previous contradictory statement as to a material part of her testimony; and the jury, *and only the jury,* thereafter had the right to evaluate her testimony and to decide how much of same, if any, was credible; and the jury (not the judge) had the right to disbelieve it in its entirety (Code §§ 38-1803, 38-1805), or to believe it in part and disbelieve it in part.

The law is quite plain that when there is an effort to impeach a witness, the judge cannot step in thereafter and direct a verdict. The credibility, including a decision on whether the attempt to impeach was successful, must be made *by the jury and by the jury alone.* For the judge to invade the province of the jury in such

instance is reversible error. The following authorities are conclusive on this matter, to wit: *Southern R. Co. v. Gale,* 103 Ga. App. 87, 91 (2) (118 SE2d 742); *Raven v. Dodd's Auto Sales &c., Inc.,* 117 Ga. App. 416, at 421 (3) (160 SE2d 633); *McCurry v. Bailey,* 224 Ga. 318, 320 (162 SE2d 9); *Travelers Ins. Co. v. Miller,* 104 Ga. App. 554 (2), at 563 (122 SE2d 268). In *Cash v. Cash,* 212 Ga. 416 (93 SE2d 346), it is held: "Where a witness is sought to be impeached, the weight and credit to be given the testimony of such witness is a question exclusively for the jury. Code § 38-1805; *Huff v. State,* 104 Ga. 521, 523 (2) (30 SE 808)."

Did Debra testify truthfully as to not being allowed to let others use the car; and as to whether she gave the keys to and loaned it to Bruce Dangler, or whether he took it without her knowledge and consent? She may have testified truthfully, although a disinterested witness flatly contradicted her as to lending the car, which was quite material — *but only a jury had the right to decide thereafter whether to believe or disbelieve her testimony* in part or in its entirety. And most certainly the judge could not displace the jury and disbelieve the impeaching witness, believe Debra, and direct a verdict for her on the basis of his decision as to the weight and credibility of her testimony.

There is still another very powerful reason why the trial court erred in directing a verdict for Durrett. The majority opinion proceeds upon the theory that if the minor to whom the family purpose car was entrusted was not actually present in the car at the time it was driven by another, no liability can arise against the owner. They cite in support *Pritchett v. Williams,* 115 Ga. App. 8 (153 SE2d 639), but they have overlooked the very meaningful language near bottom of page 9, as follows: "In no case in Georgia has it been held that the parent is liable when the son or family member was not in the automobile and directing its use, *or when it was not being used for a family purpose."* (Emphasis supplied.)

If the car was being used for a *family purpose* at the time of the collision, the owner is liable irrespective of the absence of his daughter from the car. This car was entrusted by the father to the daughter for her *pleasure, comfort and convenience.* If officer John Everett is to be believed (Tr. 68) Debra loaned the car to Bruce Dangler and Charles Farrar to provide all of them with coffee and hamburgers. That is a reasonable construction of his testimony. Nor does the law require that the father shall *expressly* consent to the use of the car by others than the daughter; such consent may arise by *implication. Carter v. Bishop,* 209 Ga. 919, 928 (76 SE2d

784). And we repeat that all favorable inferences arising from the testimony must be construed against the party who moves for directed verdict. *Jones v. Mayor &c. of Athens,* 105 Ga. App. 86 (1), supra.

For this additional reason the trial court erred in directing a verdict in favor of the defendant Durrett.

I therefore respectfully dissent from all of the majority opinion, except as to its affirmance of the trial court in refusing to grant Debra Durrett's motion for directed verdict.